# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF WEST VIRGINIA

**DEANDRE DAVIS,**

    Plaintiff,

v.                                                    **Civil Action No. 5:12cv48**
                                                            **(Judge Stamp)**

**SCOTT VILLERS,**
**JIM RUBENSTEIN, and KIM MURPHY,**
**improperly named as KIM MAY,**

    Defendants.

## REPORT AND RECOMMENDATION

### I. Procedural History

On March 19, 2012, the *pro se* plaintiff initiated this case by filing a civil rights complaint pursuant to 42 U.S.C. §1983 against the above-named defendants together with a motion for leave to proceed *in forma pauperis*. On April 17, 2012, the plaintiff was granted leave to proceed *in forma pauperis*, and on May 14, 2012, he paid an initial partial filing fee.

On May 15, 2012, the undersigned conducted a preliminary review of the complaint and determined that summary dismissal was not appropriate. Accordingly, an Order to Answer was entered, and Summonses were issued for the defendants.

On June 12, 2012, defendants May and Villers filed a Motion to Dismiss with a Memorandum in support, and defendant Rubenstein filed his own Motion to Dismiss with a Memorandum in support. Because the plaintiff was proceeding without counsel, the Court issued Roseboro Notices on June 13, 2012, advising the plaintiff of his right to file a responses to the defendants' motions. By Order entered on June 13, 2012, the plaintiff was directed to provide copies of his administrative remedies to support his claim that he had fully exhausted the same. Plaintiff never filed a response to the Order directing him to provide copies of his administrative remedies or to either Roseboro Notice.

1

This case is before the undersigned for a report and recommendation pursuant to 28 U.S.C. § 1915 and LR PL P 2.

## II. Contentions of the Parties

### A. The Complaint

In the complaint, the plaintiff alleges that he was deprived of toilet paper while incarcerated at the Tygart Valley Regional Jail ("TVRJ") from December 5, 2011 to December 9, 2011, when officers refused to hand out toilet paper. The plaintiff further alleges that when he asked for toilet paper, the guards told him "you have socks, don't you?" Additionally, he plaintiff alleges that because of overcrowding at the jail, there are only 4 tables with 4 chairs in his section, to accommodate "30 people on average." He also alleges that he is forced to wear used, stained underwear; the food is cold when served; and there is a lack of privacy while toileting for male inmates from female staff, all in violation of his Eighth Amendment rights.

As relief, the plaintiff seeks $10,000 for each day he has been "violated."

### B. Defendants Scott Villers and Kim May's Motion to Dismiss and Amended[1] Motion to Dismiss

In their motion to dismiss, the defendants assert that the plaintiff's complaint should be dismissed because:

1. the plaintiff's claims against them in their official capacities are prohibited by the 11th Amendment to the U.S. Constitution;

2. defendant Villers must be dismissed because plaintiff alleged no personal involvement by Villers in the violation of plaintiff's constitutional rights; and

3. plaintiff's claims are merely conclusory allegations with no factual support, insufficient to withstand dismissal pursuant to Rule 12(b)(6).

Further, the defendants reserves all defenses available to them under applicable law.

### C. Defendant Jim Rubenstein's Motion to Dismiss

---

[1] Defendants Villers and Murphy amended their motion to dismiss to correct defendant's name, because plaintiff's complaint improperly identifies defendant "Kim May" as the fiscal clerk at TVRJ, instead of Kim Murphy. (Dkt.# 30).

In his motion to dismiss, the defendant argues that the plaintiff's complaint should be dismissed because:

1. the plaintiff's claims against him in his official capacity are prohibited by the 11th Amendment to the U.S. Constitution;

2. defendant Rubenstein is entitled to be dismissed from the action because he had no control over the events that plaintiff alleges occurred at the TVRJ; and

3. plaintiff's claims are merely conclusory allegations with no factual support, insufficient to withstand dismissal pursuant to Rule 12(b)(6).

Further, defendant Rubenstein reserves all defenses available to him under applicable law.

### III. Standard of Review

**Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a

3

formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," Id. (citations omitted), to one that is "plausible on its face," Id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

## IV. Analysis

42 U.S.C. §1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Therefore, in order to state a claim under 42 U.S.C. § 1983, the plaintiff must demonstrate that a person acting under color of state law deprived him of the rights guaranteed by the Constitution or federal laws. Rendall-Baker v. Kohn, 547 U.S. 830, 838 (1982).

### A. Defendant Kim Murphy

Although it is true that *pro se* petitions should be liberally construed, no matter how unskillfully pleaded,[2] here, although plaintiff names James Rubenstein, Kim Murphy, and Scott Villers as defendants, he fails to make any specific allegations against any of them in his complaint. Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" Bell Atlantic Corp. Corp. v. Twombly, 550 U.S. 544 (2007)(quoting Conley v. Gibson, 355 U.S. 41, 47 (1957). Thus, although plaintiff fails to give any these defendants fair notice of the specific claims against them, the Court can at least construe that plaintiff is suing defendants Villers and Rubenstein in their official capacities as Acting Administrator and Commissioner of Corrections, respectively. However, because it is unclear what role defendant Murphy, as TVRJ's Fiscal Clerk, had in any violation of plaintiff's constitutional rights, the Court will not read into a complaint what is not there, and thus defendant Murphy should be dismissed from this action.

**B. Defendants Villers and Rubenstein**

Plaintiff's complaint, very liberally construed, asserts that the defendants Villers and Rubenstein, as Acting Administrator and Commissioner of the West Virginia Division of Corrections respectively, were deliberately indifferent to the Eighth Amendment violations their actions caused him.

Liability under §1983 is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir.2001)(internal citation omitted). Therefore, in order to establish liability under § 1983, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2nd Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown.

---

[2] Haines v. Kerner, 404 U.S. 519, 520 (1972).

See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a Bivens case. Rizzo v. Good, 423 U.S. 362 (1976).

In this case, defendants Villers and Rubenstein both aver that they had no personal involvement in, directed, or participated in the alleged violations of plaintiff's Eighth Amendment rights. The plaintiff has not specified whether he is suing either defendant in their individual or official capacities and makes no particular allegation against either defendant other than a general, conclusory allegation that his rights were violated. He does not assert that either defendant was personally involved in any violation of his constitutional rights, and he did not respond to the defendants' motions to dismiss. Accordingly, it appears that the plaintiff merely names defendants Villers and Rubensteins in either their official or supervisory capacities. However, official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citation and quotations omitted). Therefore, suits against state officials in their official capacities should be treated as suits against the state. Id. at 166. In order to state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

As to supervisory capacity, as previously noted, there is no *respondeat superior* liability under § 1983. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Vinnedge v. Gibbs, 550 F. 2d 926, 928 (4th Cir. 1997). Instead, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." Vinnedge, *supra*. When a supervisor is not personally involved in the alleged wrongdoing, he may be liable under §1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible. Fisher v. Washington Metropolitan Area Transit Authority, 690 F. 2d 1113 (4th Cir. 1982). Similarly,

6

a supervisor may be liable under § 1983 if the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.), cert. denied, 513 U.S. 813 (1994).[3]

In this instance, the plaintiff fails to make any allegations which reveal the presence of the required elements for supervisory liability as to defendants Villers or Rubenstein. Consequently, the plaintiff fails to state a claim against them, and thus he cannot maintain an action against them.

C. **Prison Conditions**

In general, the Eighth Amendment prohibits "cruel and unusual punishment." Farmer v. Brennan, 511 U.S. 825 (1994). The cruel and unusual punishment clause of the Eighth Amendment applies to the States through the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See Wilson v. Seiter, 501 U.S. 294 (1991). To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

It must be remembered that "the Constitution does not mandate comfortable prisons" and prisons "cannot be free of discomfort." Rhodes v. Chapman, 452 U.S. 337, 349 (1981). Therefore, a deprivation of a basic human need is "only those deprivations denying 'the minimal civilized

---

[3] "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." Shaw, 13 F.3d at 799. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" Id.

7

measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, *supra* at 298.

To act with a "sufficiently culpable state of mind," a prison official must not only know of the facts leading to the deprivation, but also know that deprivation would expose an inmate to a certain danger. See Oliver v. Powell, 250 F. Supp. 2d 593, 604 (E.D. Va. 2002); See also, DeBlasio v. Johnson, 128 F. Supp. 2d 315, 325 (E.D. Va. 2000). A constitutional violation can be shown if a prison official shows deliberate indifference to the inmate's health or safety. Farmer v. Brennan, *supra* at 828.

**1. Temporary Toilet Paper Shortage**

Conditions of confinement for those who have been convicted of crimes are evaluated under the Eighth Amendment. The United States Supreme Court set forth the general framework under which such claims are to be decided in Rhodes v. Chapman, 452 U.S. 337 (1981). "Conditions must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment." Id. at 347.

Considered under this standard, even in the light most favorable to the plaintiff, his allegations regarding lack of toilet paper for five days do not allege facts sufficient to state all elements of a claim of a constitutional magnitude. Clearly, as regrettable and unfortunate as it might have been, the plaintiff having been deprived the use of toilet paper for five days does not, by itself, rise to the level of a constitutional violation. See generally, Gilland v. Owens, 718 F.Supp. 665, 685 (D.G. 1989) ("Short term deprivation of toilet paper . . . and the like do not rise to the level of a constitutional violation"); Schwartz v. Jones, No. 99-3269, 2001 WL 118600 at * 6 (E.D.La. Feb. 9, 2001)(Failure to provide plaintiff toilet paper for one to two weeks did not state a claim of constitutional magnitude); Gilson v. Cox, 711 F.Supp. 354, 355-56 (E.D.M. 1989)(Failure to provide toilet paper upon request did not raise a substantial matter of federal constitutional law]; Citro v. Zeek, 544 F.Supp. 829, 830 (W.D.N.Y 1982) (Failure to provide an inmate with an adequate supply

of toilet paper did not present a question of constitutional magnitude); Williams v. Campbell, No. 07-885, 2008 WL 2816089 at * 7 (E.D. Pa. July 18, 2008)(Temporary deprivation of toilet paper insufficient to establish a constitutional violation).

**2. Overcrowding**

The plaintiff complains that overcrowding at the TVRJ is so severe that there are insufficient chairs to simultaneously permit all the prisoners in the section to be seated, because "there is [sic] 4 tables with 4 chairs in the section and 30 people on average."

To state a claim under the Eighth Amendment, plaintiff must demonstrate that the overcrowding, in light of overall prison conditions, deprived him of a specific human need. Williams v. Griffin, 952 F.2d 820 (4th Cir. 1991).

Plaintiff's claim that the TVRJ is overcrowded because there are only sixteen chairs for "on average," thirty inmates falls far short of proving a constitutional violation for prison overcrowding. Much more egregious overcrowding has been examined and found not to be unconstitutional. See, e.g., Rhodes v. Chapman, 452 U.S. 337, 348 (1981) (double-celling of inmates is not *per se* unconstitutional); Hite v. Leeke, 564 F.2d 670, 673-74 (1977), (temporary triple-celling of inmates not *per se* unconstitutional). While overcrowding accompanied by unsanitary and dangerous conditions can constitute an Eighth Amendment violation, provided an identifiable human need is being deprived,[4] here, plaintiff's pleadings are so terse and insufficiently-pled, he has alleged nothing to support such a finding, but merely "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, *supra* at 555. Plaintiff does not even allege that it is ever necessary that all the inmates in his unit be simultaneously seated in the available chairs; it may very well be that the number of chairs are sufficient because they are never all in use at the same time. Again, not only has he failed to show the defendants had a culpable mind, he has failed to

---

[4] See Wilson v. Seiter, supra at 303.

demonstrate that overcrowding renders the seating in his unit so inadequate that it is sufficiently serious to state a claim under § 1983.

### 3. Used Underwear

Plaintiff next complains that he was forced to wear used, stained underwear while incarcerated at the TVRJ.

A prisoner who has been convicted and sentenced cannot claim the right to be free from punishment. See Bell v. Wolfish, 441 U.S. 520, 531- 35 (1979). An understandable desire to be as comfortable as possible during confinement does not rise to the level of a fundamental liberty interest. Id. at 534. Prison security and discipline are "essential goals that may require limitation or retraction of retained constitutional rights[.]" Petrucelli v. Hasty, 605 F.Supp.2d 410 (E.D.N.Y. 2009). Complaints based solely on the inadequacy of laundry services do not rise to the level of a violation of the Eighth Amendment. Gibson v. Lynch, 652 F.2d 348, 352 (3d Cir. 1981).

Here, the plaintiff has not alleged that the previously-worn underwear he was issued upon arrival at TVRJ was not laundered and cleaned before it was given to him. Even if the underwear were stained, it does not mean, nor does plaintiff allege, that it had not been cleaned in accordance with the WVDOC industry standards prior to being issued to him, or that it posed some sort of a hazard to plaintiff's health. Nor has he plaintiff alleged that he alone, out of all the other inmates at the TVRJ, was singled out to be forced to wear used underwear, indicating that there was a "complete absence of any malicious, degrading and humiliating treatment that would give rise to a clear inference of punitive intent on the part of the defendants." Petrucelli, *supra* at 429. More importantly, plaintiff has failed to allege that he suffered any injury as a result of being forced to wear the underwear. Not only is this claim is frivolous, lacking an arguable basis in law or fact,[5] but it fails to state a claim upon which relief can be granted.

### 4. Cold Meals

---

[5] Booker v. Koonce, 2 F.3d 114, 115 (5th Cir. 1993).

In the plaintiff's complaint, he alleges that the TVRJ always serves cold food, because the food is "made the night before and put in the freezer and not warmed up upon delivery." (Dkt.#1 at 8).

The Eighth Amendment requires prisons to provide food that is not "an immediate danger to the health and wellbeing of the inmates who consume it." Robles v. Coughlin, 725 F.2d 12, 15 (2nd Cir. 1983). However, as long as a sufficient diet is provided, prison food does not rise to the level of Eighth Amendment violation. Freeman v. Trudell, 497 F. Supp. 481, 482 (E.D. Mich. 1980); Lovern v. Cox, 374 F. Supp. 32, 35 (W.D. Va. 1974). Moreover, cold food does not rise to the level of a constitutional violation. Laufgas v. Speziale, 263 Fed. Appx. 192, 198 (3rd Cir. 2008)(finding no constitutional right to hot meals every day); Brown-El v. Delo, 969 F.2d 644, 648 (8th Cir. 1992)(finding no constitutional violation for serving prisoner cold food).

Plaintiff has not alleged his health has been endangered in any way, merely that he is displeased with the temperature of the food. Thus, this claim does not rise to the level of a constitutional violation and should be dismissed.

### 5. Male Inmates' Lack of Privacy from Female Staff

Plaintiff contends that female staff can walk past and look in the male inmates' cells and see them if they are unclothed or happen to be using the toilet at the time.

While prisoners have only a very limited right of bodily privacy from guards of the opposite sex, Jordan v. Gardner, 986 F.2d 1521, 1524 (9th Cir. 1993) (*en banc*), the undersigned recognizes that the involuntary exposure of one's genitals to a member of the opposite sex, unless reasonably necessary, may be a constitutional violation. Lee v. Downs, 641 F.2d 1117 (4th Cir. 1981). Here, however, the plaintiff's description of the infrequency and brevity of the occasions in which a female correctional employee may have been able to observe him unclothed, indicates that his possible exposure was reasonably necessary to ensure the security of the jail. Such an incident clearly constitutes the type of infrequent and casual observation which does not violate an inmate's

constitutional rights. See Michenfelder v. Sumner, 860 Fed 2nd 328, 334 (9th Cir. 1988); Sattler v. Foster, No. 01-35733, 37 Fed. App'x. 311, 312 (9th Cir. 2002) ("Occasional viewing of male prisoners by female correctional officers does not violate the Fourth Amendment right to privacy or the Eighth Amendment prohibition against cruel and unusual punishment."); Kuntz v. Wilson, 1994 U.S. App. LEXIS 31610 (9th Cir. Aug. 19, 1994) ("Prisoners have only a very limited right of bodily privacy from guards of the opposite sex. . . . The assignment of female prison guards to positions requiring only infrequent and casual observation of naked male prisoners does not violate the prisoners' right to privacy."); Thomas v. Shields, 1992 U.S. App. LEXIS 32570 (4th Cir. Sep. 15, 1992)(per curiam)(male plaintiff's "right to privacy was not violated by the occasional, inadvertent encounter with female guards" who observed him in shower and on toilet). Accordingly, not only has plaintiff failed to even allege that the defendants had a culpable mind, this claim does not rise to the level of a constitutional violation and should be dismissed.

Accordingly, the undersigned finds that the claims in plaintiff's complaint are frivolous and/or vague, conclusory, insufficiently pled and fail to state claims upon which relief can be granted. The complaint, even when viewed with the liberality required by Haines v. Kerner, 404 U.S. 519 (1972), contains insufficient facts to support a finding of any constitutional violation, let alone deliberate indifference by any of the defendants, but merely sets forth a list of terse, conclusory allegations. "Constitutional rights allegedly invaded, warranting an award of damages, must be specifically identified. Conclusory allegations will not suffice." Wise v Bravo, 666 F.2d 1328, 1333 (10th Cir. 1981).

The court authorized commencement of this action *in forma pauperis* under the authority of 28 U.S.C. § 1915. Subsection (e) of that statute permits the dismissal of a case when the court is satisfied that the complaint is without merit in that it lacks an arguable basis either in law or fact. Neitzke v. Williams, 490 U.S. 319 (1989).

### IV. Recommendation

In consideration of the foregoing, it is recommended that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

**Within fourteen (14) days** after being served with a copy of this Report and Recommendation**, or by October 23, 2012**, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation**. 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

IT IS SO ORDERED.

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to transmit a copy to all counsel of record electronically.

DATED: October 9, 2012

> James E. Seibert
> JAMES E. SEIBERT
> UNITED STATES MAGISTRATE JUDGE